2006-NMCA-070

137 P.3d 640

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**John PADILLA, Defendant–Appellant.**

**State of New Mexico, Plaintiff–Appellee,**

v.

**John Padilla, Defendant–Appellant.**

**Nos. 24,990, 24,999.**

Court of Appeals of New Mexico.

April 26, 2006.

Certiorari Denied, No. 29,810,
June 12, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} In this appeal, we address whether a defendant held in prison in another state has a right under the Interstate Agreement on Detainers, NMSA 1978, § 31–5–12 (1971) (IAD), to a final disposition of habitual offender status within 180 days of serving a request contemplated by the IAD. Because the IAD does not apply to sentencing and because a habitual offender proceeding addresses sentence enhancement, we hold that a defendant does not have such a right and affirm.

{2} The IAD is a multistate agreement concerning the cooperation of states that are parties to the agreement to enable disposition of charges pending in one party state against a defendant who is imprisoned in another party state. Section 31–5–12. Article 3(A) of the IAD states the basis for a state to lodge a detainer against a prisoner of another state, establishes the prisoner's right to make a request for a final disposition of proceedings in another state, and sets a time limit of 180 days for trial. Section 31–5–12, art. 3(A). It provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged

against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the state parole agency relating to the prisoner.

{3} Defendant John Padilla pleaded no contest to four counts of forgery in Chaves County District Court. The State filed a supplemental criminal information, stating that, on the basis of four prior felony convictions, Defendant was a habitual offender justifying an enhancement of his sentence by eight years. Defendant failed to appear for sentencing, and the district court issued a bench warrant for his arrest. He was subsequently arrested and imprisoned in Arizona. Arizona is also a party state to the IAD. Ariz.Rev.Stat. Ann. § 31–481 (2002).

{4} The State placed a detainer on Defendant on August 14, 2002. It concedes that Defendant requested a final disposition with respect to the detainer under the IAD. Although the details of the detainer and the request are not clear from the record before us, in denying Defendant's motion to dismiss, the district court found, and neither party contests, that the State failed to act on the request because it did not have Defendant "transported to New Mexico within 180 days after Arizona notified New Mexico" under the IAD. The State and Defendant reached an agreement concerning sentencing, resulting in the State filing an amended supplemental information stating only two prior

felony convictions and Defendant admitting to the convictions. The district court entered its judgment, sentence and commitment, from which Defendant appeals.

■ {5} On appeal, Defendant focuses his argument on the supplemental information. We focus our analysis, therefore, on the issue of whether the IAD required the State to transport Defendant when his criminal liability had already been determined in the Chaves County proceeding.

{6} Our IAD case law has distinguished pretrial proceedings from sentencing proceedings. *State v. Sparks,* 104 N.M. 62, 716 P.2d 253 (Ct.App.1986). We held in *Sparks* that "a request for the disposition of an outstanding sentencing is not cognizable under the IAD." *Id.* at 64, 716 P.2d at 255. We relied on *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), in which the United States Supreme Court held that the IAD does not apply to probation revocation proceedings. *Sparks,* 104 N.M. at 65, 716 P.2d at 256. We reasoned that the plain meaning of the IAD's language requiring its application to an "untried indictment, information or complaint" did not apply to sentencing, but rather referred to "documents initiating criminal prosecution by charging the individual with a crime." *Id.* We also reasoned that the IAD's word "untried" further indicated that the IAD did not apply to sentencing because the defendant had already been tried and convicted for the crimes charged. *Id.* We lastly reasoned that the policy considerations underlying the IAD did not apply to sentencing. *Id.* at 65–66, 716 P.2d at 256–57.

{7} In contending that *Sparks* does not apply to his case, Defendant points out that the State filed a supplemental information, requiring him to answer to "untried" charges of being a habitual offender. We acknowledge this distinction, but it is addressed by *Carchman,* on which we directly relied in *Sparks.* In *Carchman,* the United States Supreme Court held that the IAD did not apply to probation revocation proceedings. *Carchman,* 473 U.S. at 734, 105 S.Ct. 3401. As we noted in *Sparks,* the Supreme Court interpreted "indictment," "information," and "complaint," as used in the IAD, to "refer to

documents charging an individual with having committed a criminal offense." *Carchman*, 473 U.S. at 724, 105 S.Ct. 3401. It interpreted "untried" in the IAD context to "refer to matters that can be brought to [a] full trial." *Id.* Accordingly, it concluded that even though a probation violation proceeding may involve an underlying criminal offense, it did not fall within the IAD requirements because it does not involve the prosecution or trial of that offense. *Id.* at 724–25, 105 S.Ct. 3401.

{8} Based on *Carchman*, the distinction Defendant raises between *Sparks* and this case does not counsel reversal. The supplemental information, like the charging document in *Carchman*, does not charge Defendant with a new crime, but only as a habitual offender based on prior convictions. In addition, although Defendant faces additional factual allegations concerning his identity as the person convicted of the crimes listed in the supplemental information, the resolution of these issues, as with the issues of probation revocation in *Carchman*, does not require a trial of any offense. A habitual offender proceeding determines a defendant's status as a habitual offender, not whether a defendant has committed a crime. *See* NMSA 1978, § 31–18–17 (2003) (providing that a person with prior convictions may be a habitual offender); *State v. Aragon*, 116 N.M. 267, 269, 861 P.2d 948, 950 (1993) (referring to "habitual offender status"). It relates only to the enhancement of a sentence.

{9} Further, the policy considerations of the IAD also support affirmance in this case. The purpose of the IAD is to encourage the prompt disposition of outstanding charges to address uncertainty in treatment and rehabilitation for prisoners subject to a detainer from another jurisdiction. Section 31–5–12, art. 1. As stated in *Carchman* and *Sparks*, the uncertainty and potential adverse effects facing a prisoner who has already been convicted of the underlying crimes are significantly less than if the charges remained untried. *Carchman*, 473 U.S. at 732–33, 105 S.Ct. 3401; *Sparks*, 104 N.M. at 65–66, 716 P.2d at 256–57. While the uncertainty Defendant faces relating to his enhanced sentence may be greater than the uncertainty

created by the probation violation in *Carchman*, Defendant nevertheless knows that he has entered a guilty plea to four forgery charges and that he will be sentenced for those crimes. The only real uncertainty is the extent of the sentence, which includes the enhancement. Moreover, because of Defendant's guilty plea, this case does not fall within the identified purpose of the IAD to enable a prisoner to require the charging state to address an unsubstantiated or meritless detainer. *Carchman*, 473 U.S. at 729–30, 105 S.Ct. 3401; *Sparks*, 104 N.M. at 65, 716 P.2d at 256.

{10} We note that the State claims, as a jurisdictional issue, that Defendant did not properly reserve the issue on appeal in the district court. Rule 5–304(A)(2) NMRA allows a defendant to enter a conditional guilty plea, reserving in writing the right to appeal an issue raised in a pretrial motion and adversely decided by the district court. Although Defendant's attorney orally stated when entering Defendant's plea that Defendant intended to appeal the court's decision concerning the applicability of the IAD, Defendant did not enter a written plea agreement reserving the issue. *See State v. Hodge*, 118 N.M. 410, 416, 882 P.2d 1, 7 (1994) (approving the entry of conditional pleas when appellate issues are preserved and specified in a written plea, and when the court and prosecution agree to the entry of the plea). As a result, the State contends that, because Defendant is challenging the jurisdiction of the district court to order his sentence, Defendant's sole avenue for review is Rules 5–801 and 5–802 NMRA, and this Court lacks jurisdiction of this appeal.

{11} In *State v. Shay*, 2004–NMCA–077, 136 N.M. 8, 94 P.3d 8, *cert. granted*, 2004–NMCERT–006, 135 N.M. 788, 93 P.3d 1293, *cert. quashed*, 2005–NMCERT–002, 137 N.M. 266, 110 P.3d 74, this Court addressed a similar issue. The defendant had entered a guilty plea and argued that the district court did not have the statutory authority to enhance his sentence as it did. *Id.* ¶¶ 1, 3. The defendant contended that both the state and the district court knew that he would appeal the enhancement, even though he did not reserve the issue in writing in a plea

**704**

agreement. *Id.* ¶¶ 5–6. We held that the rationale of Rule 12–216 NMRA, allowing appellate review of unpreserved jurisdictional issues, and *Hodge,* excepting jurisdictional issues from the ordinary waiver attendant to a voluntary guilty plea, permitted our review of the case. *Shay,* 2004–NMCA–077, ¶ 6, 136 N.M. 8, 94 P.3d 8.

{12} The State argues that *Shay* was incorrect in its holding, but we do not agree. We do agree with the State that Rule 5–304(A)(2) contemplates the consent to a conditional plea by the State and approval by the district court. *See* Rule 5–304(A)(2); *Hodge,* 118 N.M. at 416, 882 P.2d at 7. We also agree that this procedure provides efficiency in the plea and appeal process. *See Hodge,* 118 N.M. at 416, 882 P.2d at 7 (noting that the state's and district court's involvement should ensure efficient appellate review). However, our Supreme Court expressly recognized in *Hodge* that this procedure does not require "rigid adherence." *Id.* at 417, 882 P.2d at 8. In adopting the interpretation of the federal rule counterpart to Rule 5–304(A)(2), our Supreme Court stated:

> [W]ith the prosecution's consent and the court's approval, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

*Hodge,* 118 N.M. at 415, 882 P.2d at 6 (internal quotation marks and citation omitted). Our Supreme Court continued:

> [A]n appellate court can pardon the informalities of a conditional plea so long as the record demonstrates that the spirit of [the rule] has been fulfilled—that the defendant expressed an intention to preserve a particular pretrial issue for appeal and that neither the [state] nor the district court opposed such a plea.

*Id.* at 417, 882 P.2d at 8 (internal quotation marks and citation omitted). Similar to *Shay,* the State and the district court in this case were both aware of Defendant's intent to appeal the court's sentencing authority. *Shay,* 2004–NMCA–077, ¶ 5, 136 N.M. 8, 94

P.3d 8. The State did not voice any opposition, and the district court said "Sure" and accepted the plea. Given the jurisdictional nature of the issue and the way Defendant presented it before the district court, our review is proper on direct appeal in both cases. Rules 5–801 and 5–802 addressing habeas corpus relief do not preclude direct review of an illegal sentence in these circumstances.

## CONCLUSION

{13} We affirm the district court's judgment, sentence and commitment.

{14} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge.

IRA ROBINSON, Judge (dissenting).

ROBINSON, Judge (dissenting).

{15} A violation of the IAD occurred when the supplemental information, containing the habitual charges, had not been tried during the required 180–day period provided for in the IAD. An habitual criminal information sets out certain charges that the Prosecution must prove and the Defense must defend against. These are issues which the court must decide. Among them: Is Defendant the same person who committed the prior crimes charged? Are the prior crimes ones for which Defendant was convicted during the previous ten years? Are the prior convictions considered felonies in New Mexico? There may also be issues of authentication of documents from other states. Evidence and testimony must be presented and a decision must be made based upon this evidence. Therefore, the matter was untried at the completion of the 180–day period and, under the IAD, the habitual charges should be dismissed.

{16} The Majority views this as simply a sentence enhancement and the IAD does not apply to sentencing. I see a difference between an habitual and a regular sentencing proceeding. In a regular sentencing hearing, neither the Prosecutor nor the Defense has any obligation to present sworn testimony

upon which a judge must base his decision on specific substantive issues. In an habitual proceeding, these issues must be tried to the court.

{17} Another important difference is that when the State seeks a true sentence enhancement based on aggravated circumstances, it does not need to file an information while, in a habitual proceeding, it is necessary to file the habitual allegations as separate charges by a new or supplemental information. Because an habitual proceeding is more a trial than a sentencing, it is covered by the IAD. It is a hearing on the merits, after which sentencing takes place.

{18} Therefore, Defendant has a right, under the IAD, to a final disposition of the habitual offender charges against him within 180 days of serving a request contemplated by the IAD. The State failed in its obligation and the criminal information containing the habitual charges should be dismissed.

{19} The Majority, on page 643 of the opinion, states that "[t]he purpose of the IAD is to encourage the prompt disposition of outstanding charges to address uncertainty in treatment and rehabilitation for prisoners subject to a detainer from another jurisdiction. Section 31–5–12, art. 1." I cannot imagine a defendant having more uncertainty and trepidation than when he is waiting to have a fully contested hearing that will decide whether he will spend a long time, or even the rest of his life, in prison. I would reverse.

{20} I, therefore, respectfully dissent.